IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DAVID STAPLETON, in his capacity as Court-Appointed Receiver for the Receivership Entity, including for ZADEH KICKS, LLC, | Civ. No. 6:23-cv-01977-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| DEADSTOCK LA, INC.; ELY HALAVI, dba YEEZUS WE TRUST, | |
| Defendants. | |

AIKEN, District Judge.

This case comes before the Court on a Motion to Dismiss filed by Defendants Deadstock LA, Inc. and Ely Halavi. ECF No. 5. For the reasons set forth below, the motion is DENIED.

## BACKGROUND

Plaintiff David P. Stapleton is the court-appointed receiver in *In re Judicial Dissolution of Zadeh Kicks LLC dba Zadeh Kicks*, Lane County Circuit Court Case No. 22CV16510. Compl. ¶ 1. ECF No. 1-1.

Defendant Deadstock LA Inc. is a California corporation with its principal place of business in California. Compl. ¶ 2. Defendant Ely Halavi is a California

resident who conducts business in California under his own name or under the assumed business name "Yeezus We Trust." *Id.* at ¶ 3.

Zadeh Kicks LLC is a premium brand sneaker resale company formed in 2013. Compl. ¶ 5. Zadeh Kicks is an Oregon limited liability company that operated out of a physical location in Eugene, Oregon. Stapleton Decl. ¶ 2. ECF No. 15. Zadeh Kicks initially sold limited edition and collectable sneakers online based on its inventory of purchased shoes and established a nationwide customer base. Compl. ¶ 5. Beginning in 2019, Zadeh Kicks began advertising, selling, and collecting payments for the purchase of sneakers before their public release date. *Id.* Zadeh Kicks would price these preorders near or below the manufacturer suggested retail price to drive up the number of orders received. *Id.* Customers would pay for the preordered shoes via PayPal or wire transfer before the release date of the shoes. *Id.*

In many cases, Zadeh Kicks did not have the ability to purchase the sneakers for less than the price at which it had presold the sneakers. Compl. ¶ 6. Zadeh Kicks would purchase the sneakers from other third-party vendors for or above retail price. *Id.* "In other words, Zadeh Kicks collected money for preorder sales from victim customers knowing that actually fulfilling the orders would be financially ruinous." *Id.* By late 2020, Zadeh Kicks was advertising, selling, and collecting payments from victims for preorders knowing that it could not satisfy all the orders it received. *Id.* at ¶ 7.

Rather than offering refunds for the undelivered shoes, Zadeh Kicks offered "a combination of refunds and gift cards to those who did not receive sneakers" and

"would offer to 'buy back' the sneakers from customers at a premium, offering cash and gift cards in excess of the amounts paid by its customers for the sneakers." Compl. ¶ 8. By offering gift cards for future purchases in the buyback scheme, "Zadeh Kicks was able to keep more of the cash profits from the fraud." *Id.*

Over the course of the scheme, Zadeh Kicks accepted preorders for over 600,000 pairs of sneakers and "had no way of acquiring the quantity needed to fill the number of preorders." Compl. ¶ 9. "Nevertheless, Zadeh Kicks accepted payments for orders knowing it could not fulfill many of the orders." *Id.* By April 2022, Zadeh Kicks owed customers more than $70 million for undelivered sneakers, plus "additional millions held by customers in worthless gift cards for Zadeh Kicks." *Id.* ¶ 10. Zadeh Kicks "was insolvent at all material times." *Id.* ¶ 12.

Zadeh Kicks went into receivership and the Receiver was appointed on May 20, 2022. Stapleton Decl. ¶ 4. The Receiver undertook a forensic accounting review of Zadeh Kicks' finances. One of the Receiver's duties was to identify customers of Zadeh Kicks who "ultimately received more money than they had paid to Zadeh Kicks," and attempt to secure the return of those funds to those who had suffered losses from Zadeh Kicks' scheme. *Id.* Defendants were identified as "net winners" in their dealing with Zadeh Kicks. *Id.* at ¶ 5.

Between 2020 and 2022, Defendants maintained a commercial relationship with Zadeh Kicks in which Defendants placed large orders for sneakers from Zadeh Kicks. Stapleton Decl. ¶¶ 6-8. The Receiver asserts that Defendants "knew Zadeh Kicks was an Oregon-based company with a physical location, inventory, employees

and bank accounts all in Oregon." *Id.* at ¶ 6.  Transactions between Defendants and Zadeh Kicks were done by wire transfers through a bank branch in Eugene, Oregon and sneakers were shipped to Defendants from Zadeh Kicks' Oregon warehouse. *Id.* ¶ 7.  The Receiver identified more than twenty individual wire transactions between Defendants and Zadeh Kicks. *Id.* at 7.  The Receiver affirms that between January 2020 and April 2022, Defendants "received a total of $955,687 in the from of cash and sneakers from Zadeh Kicks in excess of funds Defendants paid to Zadeh Kicks." Stapleton Decl. ¶ 5.

## DISCUSSION

The Receiver brings claims for (1) avoidance of constructive fraudulent transfers pursuant to ORS 95.230 and 95.240; and (2) unjust enrichment.  Defendants move to dismiss this case based on lack of personal jurisdiction.  For a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Corp.*, 374 F.3d 797, 800 (9th Cir. 2004).  Although a plaintiff may not rest solely on the "bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id.*  Conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co.*

*v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).  As a result, the Court need only determine whether the exercise of personal jurisdiction over Defendants would offend constitutional due process requirements.  *Boschetto*, 529 F.3d at 1015.

Due process requires that the defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction."  *Boschetto*, 539 F.3d at 1016.  A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systemic" even if those contacts are wholly unrelated to the plaintiff's claims.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).  Here, the Receiver does not contend that the Court has general personal jurisdiction over Defendants in Oregon.

If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74, 477 (1985).

The "essential foundation" of specific jurisdiction is a "strong relationship among the defendant, the forum, and litigation."  *Ford Motor Corp. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 365 (2021) (internal quotation marks and citations omitted).  "[T]he relationship must arise out of contacts that the defendant *himself*

creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks and citations omitted, emphasis in original).  The analysis also must look to the defendant's contacts with the forum state, and not with persons who reside there.  *Id.* at 285.  A defendant may be "haled into court in a forum State based on his own affiliation with the State, not based on random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286 (internal quotation marks and citations omitted).  The defendant's suit-related conduct must "create a substantial connection with the forum State." *Id.* at 284.

To determine whether the exercise of specific personal jurisdiction over a nonresident defendant is appropriate, the Ninth Circuit applies a three-part test commonly referred to as the "minimum contacts" test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) The claim must be one which arises out of the or relates to the defendant's forum-related activities; and

(3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).

The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). The burden then shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

For the first prong, courts examine whether the defendant's conduct constitutes either purposeful availment or purposeful direction. For tortious conduct that takes place within the forum state, the purposeful availment test is generally appropriate, while the purposeful direction analysis is generally appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state. *Freestream Aircraft*, 905 F.3d at 604-05. The Ninth Circuit has emphasized that there is no "rigid dividing line between these two types of claims." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (internal quotation marks and citation omitted). "Rather, when considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiff's claims—which may mean looking at both purposeful availment and purposeful direction." *Id.*

As noted, the analysis begins with an assessment of whether Defendants purposefully directed their actions towards Oregon or whether they purposefully availed themselves of the privilege of conducting activities in the forum state before

considering whether the claims arise out of the Defendants forum contacts and whether the exercise of jurisdiction would be reasonable.[1]

### A. Purposeful Direction

For purposeful direction, courts apply a three-part "effects" test under which the defendant must have (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc. v. La Lingue Contre Le Racisme Et L'Antisemtisime*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). This analysis is driven by the defendant's contacts with the forum state and not the plaintiff's or other parties' forum connections. *Walden*, 571 U.S. at 289. Here, there are no allegations supporting purposeful direction and the parties confine their arguments to purposeful availment. The Court concludes that the allegations and supporting declarations do not establish purposeful direction.

### B. Purposeful Availment

To establish purposeful availment, courts "look at a defendant's entire course of dealing with the forum state—not solely the particular contract or tortious conduct giving rise to a plaintiff's claim." *Davis*, 71 F.4th at 1163 (internal quotation marks

---

[1] The parties have presented argument as to whether the exercise of personal jurisdiction would be proper under Oregon Rule of Civil Procedure 4E in addition to Oregon's long-arm statute, Oregon Rule of Civil Procedure 4L. It is not necessary for the Court to resolve the question of whether jurisdiction because the jurisdictional analysis for Oregon Rule 4E requires consideration of the federal due process standards. *See Nike, Inc. v. Lombardi*, 732 F. Supp.2d 1146, 1152 (D. Or. 2010) (finding that the analysis of whether a transaction presents sufficient contacts with Oregon that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice under Oregon Rule 4E "is co-extensive with the federal due process analysis."). This additional inquiry is unnecessary because it is well-established that Oregon's long-arm statute is coextensive with federal due process standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990).

and citation omitted, alterations normalized). Purposeful availment exists "when a defendant's dealing with a state establishes a 'quip pro quo'—where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws and in return submits to the burdens of litigation in the State." *Id.* (internal quotation marks and citations omitted, alterations normalized). Courts examine whether the defendant "deliberately reached out beyond [its] home—by for example, exploiting a market in the forum State or entering into a contractual relationship centered there." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023). Purposeful availment can be established by a contract's negotiations, its terms, its contemplated future consequences, and the parties actual course of dealing. *Burger King*, 471 U.S. at 479.

Here, the allegations of the Complaint, the Receiver's Declaration, and the supporting exhibits establish that Defendants entered into transactions with Zadeh Kicks that involved more than twenty wire transfers back and forth between the Defendants and Zadeh Kicks, at the end of which Defendants were left holding a combination of cash and shoes worth nearly one million dollars more than they had paid to Zadeh Kicks. These transactions took place over the course of more than three years, between January 2020 and April 2022. These transactions were not random, fortuitous, or attenuated but represent a sustained commercial relationship between Defendants and Zadeh Kicks in Oregon. The Court concludes that this is sufficient to establish purposeful availment.

### C. Arising Out Of

Next, the Court must consider whether the Receiver's claims arise out of Defendant's forum contacts. The Ninth Circuit applies a "but for" test to determine whether "but for" the defendant's conduct in relation to the forum state, the plaintiff would not have suffered injury. *Adidas America, Inc. v. Cougar Sport, Inc.*, 169 F. Supp.3d 1079, 1092 (D. Or. 2016). "'The 'but for' test should not be applied narrowly; rather the requirement is merely designed to confirm that there is some nexus between the cause of action and defendant's contact with the forum.'" *Id.* (quoting *Planned Parenthood v. Am. Coalition of Life Activists*, 945 F. Supp. 1355, 1368 (D. Or. 1996)). Here, the Receiver's claims are an effort to claw back the transactions that form the basis of Defendants' purposeful availment, as well as a claim for unjust enrichment based on Defendants' retention of the excess value they received from their transactions with Zadeh Kicks. These claims plainly arise out of Defendants' contacts with Oregon.

### D. Reasonableness of Jurisdiction

Finally, the court must assess whether the exercise of jurisdiction is reasonable. The Receiver has satisfied his burden on the first two prongs, which creates a "strong presumption of jurisdiction," and Defendants must provide a "compelling reason" why the exercise of jurisdiction would be unreasonable. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). To be reasonable, jurisdiction must comport with notions of fair play and substantial justice. *Burger King,* 471 U.S. at 476. In making that determination, courts examine seven factors: (1) the extent of

the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Freestream Aircraft*, 905 F.3d at 607.

Here, Defendants do not argue that the exercise of jurisdiction would be unreasonable based upon any of the factors outlined above. Rather, Defendants argue that the exercise of jurisdiction would be unreasonable because they lack the requisite minimum contacts with Oregon, essentially incorporating their arguments from the first two prongs of the test for specific personal jurisdiction. However, the Court has determined that Defendants do have the necessary contacts with Oregon. The Court has considered the relevant factors and determines that Defendants have not met their burden of demonstrating the exercise of personal jurisdiction would be unreasonable. The Court concludes that it may exercise personal jurisdiction over Defendants and Defendants' motion to dismiss will be denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 5, is DENIED.

It is so ORDERED and DATED this ____16th____ day of August 2024.


 /s/Ann Aiken _____
ANN AIKEN
United States District Judge