IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| DAVID STAPLETON, in his capacity as Court-Appointed Receiver for the Receivership Entity, including for ZADEH KICKS, LLC, | Civ. No. 6:23-cv-01977-AA |
| Plaintiff, | **OPINION & ORDER** |
| v. | |
| DEADSTOCK LA, INC.; ELY HALAVI, dba YEEZUS WE TRUST, | |
| Defendants. | |

AIKEN, District Judge.

This case comes before the Court on a Motion to Remand, ECF No. 10, filed by Plaintiff David Stapleton (the "Receiver"). For the reasons set forth below, the motion is DENIED.

## BACKGROUND

Plaintiff David P. Stapleton is the court-appointed receiver in *In re Judicial Dissolution of Zadeh Kicks LLC dba Zadeh Kicks*, Lane County Circuit Court Case No. 22CV16510. Compl. ¶ 1. ECF No. 1-1.

Defendant Deadstock LA Inc. is a California corporation with its principal place of business in California. Compl. ¶ 2. Defendant Ely Halavi is a California

resident who conducts business in California under his own name or under the assumed business name "Yeezus We Trust." *Id*. at ¶ 3.

Zadeh Kicks LLC is a premium brand sneaker resale company formed in 2013. Compl. ¶ 5. Zadeh Kicks is an Oregon limited liability company. Stapleton Decl. ¶ 2. ECF No. 11. Zadeh Kicks initially sold limited edition and collectable sneakers online based on its inventory of purchased shoes and established a nationwide customer base. Compl. ¶ 5. Beginning in 2019, Zadeh Kicks began advertising, selling, and collecting payments for the purchase of sneakers before their public release date. *Id*. Zadeh Kicks would price these preorders near or below the manufacturer suggested retail price to drive up the number of orders received. *Id*. Customers would pay for the preordered shoes via PayPal or wire transfer before the release date of the shoes. *Id*.

In many cases, Zadeh Kicks did not have the ability to purchase the sneakers for less than the price at which it had presold the sneakers. Compl. ¶ 6. Zadeh Kicks would purchase the sneakers from other third-party vendors for or above retail price. *Id*. "In other words, Zadeh Kicks collected money for preorder sales from victim customers knowing that actually fulfilling the orders would be financially ruinous." *Id*. By late 2020, Zadeh Kicks was advertising, selling, and collecting payments from victims for preorders knowing that it could not satisfy all the orders it received. *Id*. at ¶ 7.

Rather than offering refunds for the undelivered shoes, Zadeh Kicks offered "a combination of refunds and gift cards to those who did not receive sneakers" and

"would offer to 'buy back' the sneakers from customers at a premium, offering cash and gift cards in excess of the amounts paid by its customers for the sneakers." Compl. ¶ 8. By offering gift cards for future purchases in the buyback scheme, "Zadeh Kicks was able to keep more of the cash profits from the fraud." *Id.*

Over the course of the scheme, Zadeh Kicks accepted preorders for over 600,000 pairs of sneakers and "had no way of acquiring the quantity needed to fill the number of preorders." Compl. ¶ 9. "Nevertheless, Zadeh Kicks accepted payments for orders knowing it could not fulfill many of the orders." *Id.* By April 2022, Zadeh Kicks owed customers more than $70 million for undelivered sneakers, plus "additional millions held by customers in worthless gift cards for Zadeh Kicks." *Id.* ¶ 10. Zadeh Kicks "was insolvent at all material times." *Id.* ¶ 12.

On May 19, 2022, Zadeh Kicks filed a petition for voluntary dissolution and appointment of a receiver in Lane County Circuit Court. Stapleton Decl. ¶ 3. The Receiver was appointed on May 20, 2022. *Id.* at ¶ 4. The Receiver undertook a forensic accounting review of Zadeh Kicks' finances. One of the Receiver's duties was to identify customers of Zadeh Kicks who ultimately received more money than they had paid to Zadeh Kicks, and attempt to secure the return of those funds to those who had suffered losses from Zadeh Kicks' scheme. *Id.* at ¶¶ 4-5. Defendants were identified as "net winners" in their dealing with Zadeh Kicks. *Id.* at ¶ 6.

The Receiver affirms that between January 2020 and April 2022, Defendants "received a total of $955,687 in the form of cash and sneakers from Zadeh Kicks in excess of funds Defendants paid to Zadeh Kicks." Stapleton Decl. ¶ 6. The Receiver

notified Defendants and other net winners that he intended to initiate clawback actions in Lane County Circuit Court. *Id.* at ¶ 7. The Receiver initiated this action in Lane County Circuit Court in September 2023 and filed the operative Complaint in October 2023. *Id.* at ¶ 8. The Receiver has initiated separate actions against other net winners in the same Court. *Id.*

Defendants timely removed this case to federal court on the basis of diversity jurisdiction. Some, but not all, of the other net winners similarly removed their cases to federal court.

## DISCUSSION

The Receiver brings claims for (1) avoidance of constructive fraudulent transfers pursuant to ORS 95.230 and 95.240; and (2) unjust enrichment. Defendants removed to federal court and the Receiver moves to remand the case back to Lane County Circuit Court.

A defendant may remove a civil action from state court to federal court if the court has original jurisdiction over the matter. 28 U.S.C. § 1441, 1446. Federal district courts have original jurisdiction in cases of diversity, meaning "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a). A plaintiff may move to remand the case back to state court on the basis of a procedural or jurisdictional defect. 28 U.S.C. § 1447(c). Generally, however, district courts have a duty to adjudicate cases that are properly before them. *Allegheny Cnty. v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959).

In this case, the Receiver does not dispute that the requirements of diversity jurisdiction are met but urges remand "to achieve judicial economy and efficiency, and to avoid risk of inconsistent rulings as the receivership court is presiding over the bulk of the Receiver's claw back actions," and because the receivership court "has exclusive jurisdiction concerning all of the claims and assets of the Receivership Entity." Pl. Mot. 2. The Receiver makes two arguments in favor of remand: (1) this Court should abstain based on the holding of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); and (2) this Court should abstain under the doctrine of discretionary abstention.[1]

### A. *Colorado River*

Federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given to them." *Colorado River*, 424 U.S. at 817. As a result, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

"Generally . . . the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (internal quotation marks and citation omitted). "However, the Supreme Court has identified several instances in which it is appropriate for a federal court to abstain from exercising its jurisdiction." *Ernest*

---

[1] In his Reply, the Receiver also asserts that Defendants "fail to make a case for the necessity of a federal forum" because there are "no federal rights, claims, or offenses at issue." Pl. Reply 4. The *necessity* of federal jurisdiction is irrelevant. Defendants have a right to have their case heard in federal court under 28 U.S.C. § 1332(a). The absence of claims related to federal rights or offenses is relevant to federal question jurisdiction, rather than diversity jurisdiction.

*Bock LLC v. Steelman*, 76 F.4th 827, 835 (9th Cir. 2023). In "exceptional circumstances, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation can support a stay of federal litigation in favor of parallel state proceedings." *Id.* at 836 (internal quotation marks and citation omitted, alterations normalized). However, a stay under *Colorado River* is distinct from "traditional abstention doctrines" because "[w]hile traditional forms of abstention rest on considerations of proper constitutional adjudication and regard for federal-state relations, *Colorado River* stays are based on administrative concerns and prioritize efficient disposition of litigation through wise deployment of judicial resources." *Id.* "*Colorado River* is not abstention doctrine, although it shares the qualities of one." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1202 (9th Cir. 2022). Rather, it is a "type of stay." *Ernest Bock*, 76 F.4th at 832 n.2. *Colorado River* applies when a court decides to "dismiss or stay" a case when it "concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties" and "it would be serious abuse of discretion to grant the stay or dismissal at all" if there was "any substantial doubt as to this." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 28 (1983).

Here, the Receiver is not seeking a stay or dismissal, but rather requests remand to state court. This is not a proper application of *Colorado River* abstention. Furthermore, even if the Court were to consider the motion under *Colorado River*, the "threshold requirement" of the doctrine is the existence of parallel litigation in

state court. *Ernest Bock*, 76 F.4th at 838. The Receiver concedes that no such parallel litigation exists. Pl. Mot. 8. Remand under the doctrine of *Colorado River* abstention would therefore be inappropriate.

### B. Discretionary Abstention

The Receiver also urges the Court to remand based on comity between the state and federal courts under the doctrine of discretionary abstention. In support of this request, the Receiver points to *City & Cnty. of San Francisco v. Assessment Appeals Bd. for City & Cnty. of San Francisco No. 1*, 122 F.3d 1274 (9th Cir. 1997) and *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988). Neither case supports abstention or remand in this case.

In *City & Cnty. of San Francisco*, the Ninth Circuit acknowledged that comity provides a basis for discretionary abstention but held that the district court erred by remanding when the defendant had a statutory right to have their claims heard in federal court. 122 F.3d at 1278. Here, Defendants have a right to have their claims heard in federal court under 28 U.S.C. § 1332(a).

*Cargengie-Mellon University*, by contrast, involved remand in a situation in which all federal claims had been dismissed and only pendant state law claims remained. 484 U.S. at 348. This is obviously not analogous to the present case as no federal law claims have been alleged and pendant jurisdiction is not implicated here.

The Court declines to remand on the basis of discretionary abstention.

## CONCLUSION

For the reasons set forth above, the Receiver's Motion to Remand, ECF No. 10, is DENIED.

It is so ORDERED and DATED this <u>    19th    </u> day of August 2024.

<u> /s/Ann Aiken                              </u>
ANN AIKEN
United States District Judge